IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

KAREN JOAN GAY,
      Plaintiff,

vs.                                 Case No.: 3:13cv525/EMT

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,
      Defendant.
_____/

## MEMORANDUM DECISION AND ORDER

        This case has been referred to the undersigned magistrate judge for disposition pursuant to the authority of 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, based on the parties' consent to magistrate judge jurisdiction (*see* docs. 9, 10).  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("the Act"), for review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401–34, and for supplemental security income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. §§ 1381–83.

        Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence and application of proper legal standards; thus, the decision of the Commissioner is affirmed.

I.      PROCEDURAL HISTORY

        On December 10, 2007, Plaintiff filed applications for DIB and SSI, and in each application she alleged disability beginning August 1, 2006 (Tr. 128, 303, 307).[1]  Her applications were denied

---

[1] All references to "Tr." refer to the transcript of Social Security Administration record filed on January 10, 2014 (Doc. 14).  The page numbers refer to those found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system or any other page numbers that may appear.

initially and on reconsideration, and thereafter she requested a hearing before an administrative law judge ("ALJ").  A hearing was held on July 24, 2009, and on September 17, 2009, the ALJ issued a decision finding Plaintiff "not disabled," under the Act.

The ALJ found that Plaintiff met the insured status requirements of the Act  through June 30, 2011, and that she had not engaged in substantial gainful activity since August 1, 2006, her alleged onset date (Tr. 130).  The ALJ further found Plaintiff suffered severe impairments from obesity, lupus, diabetes mellitus, hypertension, depression, peripheral neuropathy, and seizure disorder (Tr. 130).  Nonetheless, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 134).

The ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform a significant range of light work as defined in 20 C.F.R. §§ 404.156(b) and 416.967(b), and he thereby found her capable of performing work in her past relevant employment as a trimmer (Tr. 135, 138).  Accordingly, the ALJ found Plaintiff not to be disabled within the meaning of the Act from August 1, 2006, through September 17, 2009, the date of the ALJ's decision (Tr. 138).

Plaintiff appealed the decision, and the Appeals Council vacated it and remanded the case to an ALJ on the following grounds:

1.  The ALJ found obesity to be a severe impairment but did not assess how it affects the claimant's ability to perform work related activities;

2.  The ALJ found depression to be a severe impairment, but the RFC finding did not include any mental limitations/restrictions except for limitations to 1-2 step work; and

3.  The ALJ did not address the specific limitations in the assessment provided by the DDS medical consultant even though the decision stated that the DDS opinion evidence was consistent with the evidence of record and was given some weight. The DDS medical consultant had provided a mental RFC assessment, noting that the claimant could understand and remember simple instructions but not detailed ones. The consultant noted that the claimant would benefit from a flexible schedule allowing for her to miss 1-2 days of work per month due to fatigue; to have regular rest breaks and a slowed pace; to have only casual contact with the public; and to receive supportive feedback.

(Tr. 141–42).

Upon remand, another hearing was held on March 13, 2012, and on May 30, 2012, the ALJ[2]

issued a decision again finding that Plaintiff was not disabled as defined under the Act (Tr. 22–38).

The Appeals Council subsequently denied Plaintiff's request for review (Tr. 1–3).  Thus, the

decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court.

Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007).

II.     FINDINGS OF THE ALJ

    In denying Plaintiff's claims, the ALJ made the following relevant findings (*see* tr. 22–38):

    1.      Plaintiff meets the insured requirements of the Act through June 30, 2011[3];

    2.      Plaintiff has not engaged in substantial gainful activity since August 1, 2006, the date
she alleges she became disabled;

    3.      Plaintiff has the following severe impairments: lupus, diabetes mellitus, peripheral
neuropathy, mild degenerative changes of lumbosacral spine, history of seizure disorder,
hypertension, obesity, and depression (20 C.F.R. §§ 404.1520(c) and 416.920(c));

    4.      Plaintiff does not have an impairment or combination of impairments that meets or
medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P,
Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

    5.      Plaintiff has the RFC to perform a reduced range of light work as defined in 20
C.F.R. §§ 404.1567(b) and 416.967(b) except she can lift/carry 20 pounds occasionally and 10
pounds frequently; she can stand/walk two hours at a time and six hours total during an entire eight-
hour workday; she can frequently use her bilateral upper extremities for pushing/pulling activities,
reaching, handling, fingering, and feeling; she is restricted from climbing ladders, ropes, or
scaffolds, and kneeling, crouching, or crawling; she can occasionally climb stairs/ramps, balance,
and stoop; Plaintiff should avoid more than occasional exposure to extreme temperatures, wetness,
and humidity; and she should avoid all use of moving dangerous machinery, driving automotive
equipment, and unprotected heights.  Plaintiff is limited to simple and routine tasks, occasional
changes in the work setting, and occasional independent judgment/decision making.  Plaintiff should
not be exposed to noises louder than those found in a typical office type environment.  Plaintiff can

---

[2] While Plaintiff's case was initially presided over by Administrative Law Judge F. Jefferson Hughes, after
remand Administrative Law Judge Marni R. McCahhren heard the case and rendered the decision.

[3] Thus, the time frame relevant to Plaintiff's claim for DIB is August 1, 2006 (date of alleged onset), through
June 30, 2011 (date last insured).  The time frame relevant to her claim for SSI is December 10, 2007 (the date she
applied for SSI), through May 30, 2012 (the date the ALJ issued her decision).  *See* Moore v. Barnhart, 405 F.3d 1208,
1211 (11th Cir. 2005) (indicating that SSI claimant becomes eligible to receive benefits in the first month in which she
is both disabled and has an SSI application on file).

only rarely (5% of the workday or less) interact with the general public.  She can work around supervisors and coworkers, but should not have to work in coordination with others to complete tasks.  Due to pain, medicinal side effects, psychological factors, etc., Plaintiff could be expected to have deficits in concentration, persistence, or pace, which could cause her to be off-task or at a non-productive pace for up to 5% of the workday.

6.     Plaintiff is unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

7.     Plaintiff was born on October 20, 1969, and was 36 years old, which is defined as a younger individual aged 18–49, on the alleged disability onset date (20 C.F.R. §§ 404.1563 and 416.963).

8.     Plaintiff has at least a high school education and is able to communicate in English (20 C.F.R. §§ 404.1564 and 416.964).

9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled," whether or not she has transferable job skills (*see* SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10.     Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.     Plaintiff has not been under a disability, as defined in the Act, at any time during the period commencing August 1, 2006, and continuing through May 30, 2012, the date of the decision (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

III.   STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards.  Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles."  Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214

(11th Cir. 1991).  As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); <u>Falge v. Apfel</u>, 150 F.3d 1320, 1322 (11th Cir. 1998); <u>Lewis</u>, 125 F.3d at 1439; <u>Foote v. Chater</u>, 67 F.3d 1553, 1560 (11th Cir. 1995).  Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); <u>Lewis</u>, 125 F.3d at 1439.  The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence.  <u>Sewell v. Bowen</u>, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* § 423(d)(2)(A).  Pursuant to 20 C.F.R. § 404.1520(a)–(g),[4] the Commissioner analyzes a disability claim in five steps:

1.      If the claimant is performing substantial gainful activity, she is not disabled.

2.      If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3.      If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

---

[4] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI, but separate, parallel statutes and regulations exist for DIB and SSI claims (*see* 20 C.F.R. §§ 404, 416).  Therefore, citations in this Order should be considered to refer to the appropriate parallel provision.  The same applies to citations of statutes or regulations found in quoted court decisions.

4.      If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

5.      Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her RFC and vocational factors, she is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work.  20 C.F.R. § 404.1512.  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must then prove she cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.      RELEVANT HEARING TESTIMONY & MEDICAL/PSYCHOLOGICAL HISTORY

A.      Hearing Testimony

Plaintiff testified at her March 13, 2012, hearing before the ALJ as follows.  She was living with her father, brother, and five-year-old daughter (Tr. 48).  Plaintiff stated she was five feet, ten inches tall and that she weighed 290 pounds (Id.).  She stated she had worked as a cashier and stocker in retail from 1999 to 2006 on a full time basis, and by August 1, 2006, she was unable to work.  This period of time coincided with her giving birth to her daughter, for which she had gone on maternity leave (Tr. 50).  Plaintiff stated that after her daughter's birth her symptoms of lupus became exacerbated (Id.).

Plaintiff testified that the lupus caused her to be constantly tired (Tr. 55).  For example, she stated, "[I]f I'm doing laundry or something . . . and there's quite a few loads that I have to do . . . it'll usually take about a day or two for me to get over from doing it, just what I did that one day (Id.).  She noted that she helped her father out as much as she could with daily household chores; and when her daughter was not in school, she spent time feeding and taking care of him (Tr. 64).

Plaintiff testified she experiences almost constant pain in the muscles of her arms and legs, problems with her back "going out," numbness in her hands which may cause her to lose her grip on objects, and swelling in her feet (Tr. 53–56).  She identified her pain on a scale of 1 to 10 as being an average of 7 to 8 (Tr. 58).  She further testified to being able to stand no longer than 15

minutes at a time and sit no more than 30 minutes at a time (Tr. 59).  She also reported having significant difficulty picking up her daughter, whose weight she approximated at 60 pounds (*Id.*).

   B.   Relevant Medical/Psychological History

   In February 2007, Plaintiff enlisted the care of Gaynell B. Taylor, M.D., with complaints of joint pain and swelling from her lupus, which was initially diagnosed in 2002, and possibly rheumatoid arthritis (Tr. 495–97).  Plaintiff reported that her medication had lapsed and that she had been experiencing flare-ups in her joints, as well as symptoms of depression (Tr. 495).  She was also fearful of having seizures.  Dr. Taylor assessed Plaintiff as having systemic lupus erythematosus ("SLE"), possible rheumatoid arthritis, gastroesophageal reflux, hypertension, depression, and a "seizure" disorder (Tr. 496).  Dr. Taylor prescribed Lortab and Celebrex for pain as well as Lasix, Phenobarbital, and Plaquenil (Tr. 497).  Plaintiff had another visit three months later for refills of her medication, and she also complained of lightheadedness and fatigue (Tr. 486).  Dr. Taylor prescribed Flexeril for muscle spasms and Zoloft for depression (*Id.*).

   In June 2007, Plaintiff was diagnosed with onset diabetes along with hypertension (Tr. 485).  Dr. Taylor prescribed Glucophage and provided instruction on managing her diabetes (*Id.*).  In July 2007, Dr. Taylor diagnosed Plaintiff with peripheral neuropathy after her complaints of burning and tingling in her knees and seat area, for which Januvia was prescribed (Tr. 480).  During this time, Dr. Taylor described Plaintiff's blood sugar level as being slightly elevated (*Id.*).

   On referral from Dr. Taylor, Plaintiff came under the care of a rheumatologist, Dr. Young Soh, in February of 2007.  Plaintiff's presenting complaint was swelling and pain in her knees and arms (Tr. 495).  Dr. Soh found no physical signs of inflammation, swelling or tenderness, and "no active clinical signs or manifestations of the lupus" beyond a skin rash on her face (Tr. 522–23).  Dr. Soh therefore "rule[d] out systemic lupus erythematosus" (Tr. 523).  On a follow-up visit in March of 2007, Dr. Soh noted that Plaintiff's "fatigue and muscle and joint pain has much diminished" (Tr. 518).  On another visit, in October of 2007, Plaintiff presented with pain in her hip area, and though Dr. Soh found no other symptoms, his assessment had changed to include SLE (Tr. 511).  In November of 2007, Plaintiff again visited Dr. Soh, who noted her symptoms of pain in her back and knees, which he attributed largely to her obesity (Tr. 509).  Dr. Soh again assessed SLE but noted that her lupus was stable with "no clinical activity" (*Id.*).

In February of 2008, Plaintiff underwent a consultative psychological evaluation by Randy Jordan, Psy.D. (Tr. 527–29).  A mental status examination showed Plaintiff to be of average or high average intelligence with sound judgment and memory (Tr. 528).  Plaintiff acknowledged bouts with depression and "some 'cutting' behavior in her teens and from 1999 to 2001 with razor blades" (Tr. 527).  She was diagnosed with depressive disorder (Tr. 528).  While Dr. Jordan found that Plaintiff's ability to respond to others in a work environment might be "mildly compromised secondary to psychiatric issues," he found no evidence that Plaintiff's functioning in a job situation would be psychologically impaired (Tr. 528–29).

Also in February of 2008, Plaintiff underwent a consultative physical evaluation by Sam R. Banner, M.D. (Tr. 530–33), whose physical examination of Plaintiff's extremities and back yielded normal results (Tr. 531–33).  Plaintiff also came under the care of Jennifer S. Marsden, M.D., during 2008, evidently because Plaintiff's medications had lapsed since November of 2007 and her symptoms were returning (Tr. 574).  Dr. Marsden prescribed appropriate medications for Plaintiff's diabetes, hypertension, lupus, and depression (Tr. 567, 574).  On a return visit in June of 2008, Plaintiff reported that the pain in her abdomen, which had been ongoing for several years, was "not as bad as it has been in the past" (Tr. 569).

From 2008 to 2010, Plaintiff was seen by Robert L. Gilliam, M.D., and his nurse practitioner, Kelli McAllister, CRNP.  In December of 2008, it was noted that, because of money issues, Plaintiff was not taking any of her medications with the exception of insulin for her diabetes and that she was experiencing pain and also numbness in her hand and leg (Tr. 718).  In July 2009, Plaintiff was offered assistance in applying for a pharmaceutical assistance program that might provide free medication, but evidently this was not realized due to Plaintiff's inability to obtain tax filings to show proof of income (Tr. 689).

During 2011 and 2012, Plaintiff came under the general care of Ronald A. Maddux, M.D. (Tr. 594–638, 751–71, 774–85, 807–14), generally for routine examination and maintenance of her conditions and other ailments such as incontinence (Tr. 594–638, 751–71, 774– 85, 807–14). During monthly examinations from September to December of 2011, Dr. Maddux found Plaintiff to have full range of motion in all of her joints, though she did report "moderate dull aching" in her shoulder, hips and arms during the November examination, pain in her thigh and arms during her October examination, and ongoing abdominal and periumbilical pains during her September visit (Tr. 761, 769–70, 781, 784).

In late December of 2011, Plaintiff saw Matthew Warner, M.D., for a consultative physical examination (Tr. 720–23). Plaintiff acknowledged pain in her back but little else, and she was seen as having normal strength and range of motion in all her joints (Tr. 722–23). Plaintiff was able to perform straight leg lifts with no pain reported, and during her exam she was able to walk, sit, squat, bend, dress and undress, and grasp and shake hands (Tr. 723).

In January of 2012, Plaintiff was seen by Julie F. Harper, Psy.D., for a consultative psychological evaluation (Tr. 741–46). Dr. Harper diagnosed Plaintiff as having dysthymic disorder, though it was noted that Plaintiff was achieving more beneficial ways of dealing with her emotional difficulties than was previously the case, and that an underlying factor might be her feelings of responsibility for the care of her daughter (Tr. 746). Test scores indicated no evidence of difficulty with memory (*Id.*).

Plaintiff, having experienced gastroenterological problems such as GERD, diarrhea and abdominal cramping, was seen by Scott Finnelli, M.D., in October and December of 2011. He found Plaintiff to be morbidly overweight and noted that her dietary habits were very poor, upon which he counseled her (Tr. 793, 799). Plaintiff reported drastic weight losses and gains during December 2011, which Dr. Finnelli found "unlikely" (Tr. 793).

In February of 2008, Plaintiff's medical record, particularly her mental health record and Dr. Randy Jordan's findings, was reviewed by state agency psychologist Gloria Roque, Ph.D. Dr. Roque noted Plaintiff's history of depression, her "borderline personality traits," and the other impressions recorded by Dr. Jordan (Tr. 547). She stated the following:

> In terms of vocation, the clmn't [sic] ability to carry out and remember instructions of a simple, one step nature is not compromised. More complex instructions can be carried out if she is medically able. The claimant's ability to respond well to coworkers, supervision, and everyday work pressures is mildly compromised secondary to psychiatric issures [sic].

(*Id.*).

Correspondingly, in her Functional Capacity Assessment Dr. Roque concluded:

> A. Claimant could understand and remember simple instructions but
> not detailed ones.
> B. Claimant could carry out simple instructions and sustain attention
> to routine/familiar tasks for extended periods. Claimant would
> benefit from a flexible schedule and would be expected to miss 1-2

days of work per month due to fatigue.  Claimant would benefit from
regular rest breaks and a slowed pace.
C. Contact with the public should be casual.  Feedback should be
supportive.
D. No limitations.

(Tr. 551).  It is evident that Dr. Roque's conclusions were separated into four sections to mimic the
"Summary Conclusions" part of the report which contained the sections titled Understanding and
Memory; Sustained Concentration and Persistence; Social Interaction; and Adaptation (Tr. 549–50).

Also in February of 2008, state agency medical consultant Keith H. Langford, M.D.,
reviewed Plaintiff's medical records, and completed a Physical RFC Assessment in which he
concluded that Plaintiff could perform light work (*see* Tr. 555).  He also stated that "Claimant's
statements of symptoms and functional limitations are not fully credible as the severity alleged is
not consistent with the objective findings from the objective medical evidence in the file" (Tr. 559).

V.        DISCUSSION

A.        Mental Health Assessment

Plaintiff first contends the ALJ erred by not specifically addressing "significant evidence of
record," namely, the opinion given on Plaintiff's mental health by Dr. Roque, Ph.D., in February of
2008 (Tr. 535).

The ALJ provided the following with regard to Plaintiff's functional abilities:

The remaining consultative reports by Drs. Jordan and Harper do not reflect
significant functional limitations.  Dr. Harper opined the claimant had no more than
mild limitations in her ability to make judgments on work-related decisions as well
as remember and carry out even complex instructions.  Dr. Harper further opined the
claimant had moderate limitations regarding her ability to functional [sic] socially;
however, no marked limitations were described in any functional area.  Significant
weight is assigned to this opinion because other substantial evidence of record,
including the February 2008 evaluation and opinion of Dr. Jordan, supports these
conclusions.  Dr. Jordan opined the claimant was capable of functioning
independently, participating in normal conversations without difficulty, remembering
and carrying out at least simple instructions, and responding well to others with only
mild compromise.  The claimant has not required intensive outpatient therapy or
individual counseling sessions and has not received inpatient hospital treatment for
any reason related to her mental health during the period at issue.

(Tr. 35).

Dr. Roque's assessment similarly provided that Plaintiff possessed the ability to remember and carry out simple instructions and perform routine tasks for extended periods and that she could perform more complex instructions so long as she is otherwise medically able (Tr. 547, 551).  Dr. Roque also concurred in the assessment that Plaintiff would respond well to coworkers, supervision, and the pressures of work with only mild compromise (Tr. 550).  Thus, her assessments fell in line with the findings of both Drs. Jordan and Harper.  In fact, it is apparent that Dr. Roque's report drew heavily if not entirely from the examinations performed by Dr. Jordan and his impressions thereon, and her conclusions essentially replicate those made by Dr. Jordan.

Because the ALJ fully incorporated the evaluations of Drs. Jordan and Harper in her analysis, and because there is no substantive difference between their conclusions and those drawn by Dr. Roque, it is of no moment that Dr. Roque's assessment was not specifically cited.  As long as the ALJ's decision can fairly be seen to have considered the evidence as a whole, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in [her] decision . . . ."  Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (citing Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995)).  Here, the ALJ's review of the record was sufficiently particularized, and her own findings, which recognized Plaintiff's limitations regarding simple and routine tasks and less interaction with coworkers and with the general public, comported with medical recommendations.  Plaintiff's argument, which does not venture much beyond the conclusory assertion that Dr. Roque's report was not specifically addressed, is unavailing.

B.      Pain Assessment

Next, Plaintiff asserts that the ALJ erred by failing to properly apply the three-part standard established by the Eleventh Circuit for evaluating disability based upon complaints of pain.  Plaintiff faults the ALJ for not having explicitly identified the reasons for discrediting Plaintiff's testimony of her chronic pain.  In so arguing, Plaintiff cites to numerous instances in the record in which she has complained to her doctors about pain.  As Plaintiff recites them in her brief, her complaints mostly amounted to generalized symptoms such as "all over pain," "joint pain and stiffness," "neuropathy pain and back pain," "occasional wrist pain and numbness," "pain and swelling in her legs," "continued myalgia pain in the hip and upper arm," "hand and leg numbness," "occasional

pain in the lower back and abdomen," "tingling in her legs radiating from her seat to knee," and "arthralgias and fatigue" (doc. 16 at 10-11; *see also* Section IV.A. and B., *supra*).

A claimant may establish that she has a disability through her own testimony regarding her pain or other subjective symptoms. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam). In such a case, the claimant must show: (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. *Id.* Reversal is warranted if the ALJ's decision contains no evidence of the proper application of the three-part standard. *See* Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam). The ALJ is not required to recite the pain standard word for word, but instead, must make findings that indicate that the standard was applied. *See* Wilson v. Barnhart, 284 F.3d 1219, 1225–26 (11th Cir. 2002) (per curiam) (holding that the ALJ did not err where his findings and discussion indicated that the three-part standard was applied and he cited to 20 C.F.R. § 404.1529; also noting that § 404.1529 "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard.").

If, as here, the ALJ determines under the third prong of the standard that the claimant has a medically determinable impairment that could reasonably be expected to produce the pain, she must then evaluate the extent to which the intensity and persistence of the pain limits the claimant's ability to work. 20 C.F.R. § 404.1529(b). The ALJ may consider the claimant's history, the medical signs and laboratory findings, the claimant's statements, statements by treating and non-treating physicians, and other evidence relating to how the pain affects the claimant's daily activities and ability to work. § 404.1529(c). "While both the Regulations and the Hand [v. Bowen, 793 F.2d 275, 276 (11th Cir. 1986)] standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." Elam, 921 F.2d at 1215. "[P]ain alone can be disabling, even when its existence is unsupported by objective evidence." Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995) (citations omitted). The presence or absence of evidence to support symptoms of the severity claimed, however, is a factor

to be considered.  Marbury v. Sullivan, 957 F.2d 837, 839–40 (11th Cir. 1992); Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).

When evidence of pain derives from the subjective testimony of the claimant or other personal witnesses, "and a credibility determination is, therefore, a critical factor in the Secretary's decision, the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."  Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983).  Thus, a broad, conclusory finding that the testimony lacks credibility is insufficient.  Foote, 67 F.3d at 1562 (citing Jamison v. Bowen, 814 F.2d 585, 588–90 (11th Cir. 1987)).  Where the reviewing court is left to infer a finding on credibility from the ALJ's ultimate holding, "such an implication is too subtle to measure up to the degree of precision required of adjudicative fact-finding."  Tieniber, 720 F.2d at 1255.  Failure in this regard requires, as a matter of law, that the subjective testimony in question be accepted as true.  Foote, 67 F.3d at 1562 (citing Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988)).

In this case, while the ALJ may not have recited "chapter and verse" from the Eleventh Circuit pain standard, it is obvious from her opinion that the standard was followed.  Regardless, the court finds the ALJ borrowed phrases from the standard in her analysis, enough so to convince the court that the correct standard was employed.[5]

The ALJ determined that Plaintiff's "pain caused by lupus, neuropathy, and/or mild degenerative disc disease is accommodated by the restriction to occasionally climbing and the environmental restrictions" as set forth in the RFC findings in Paragraph 5 (Tr. 28; see also Section II., ¶ 5, supra).  The ALJ found that, while Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's "statements concerning the

---

[5] The ALJ focused her analysis on whether Plaintiff had "an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the claimant's pain or other symptoms" and, if so, how "the intensity, persistence, and limiting effects of the claimant's symptoms" might "limit the claimant's functioning" (Tr. 28).  This leaves little doubt that the Eleventh Circuit standard formed the framework of the analysis.

intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment" (Tr. 35).[6]

Contrary to Plaintiff's position, review of the ALJ's decision reveals that the ALJ adequately described Plaintiff's testimony regarding her pain (Tr. 29). The ALJ also considered Plaintiff's abilities to do household chores, care for her daughter, and do other daily activities, as well as the way these physical exertions caused pain or otherwise affected her (Tr. 29–30).[7] Additionally, in reviewing Plaintiff's medical records, the ALJ noted that "[n]o treating or non-treating medical source has opined the claimant's overall medical condition causes functional limitations inconsistent with the above-cited residual functional capacity" (Tr. 35). In particular, the ALJ attached "significant weight" to the evaluation provided by Dr. Warner who, after his consultative physical examination, indicated that Plaintiff was able to perform work-related activities within the light exertional range (Tr. 34). Further, the ALJ noted that the reports from Dr. Maddux during the time of Dr. Warner's own examination were in alignment with Dr. Warner's conclusions (*Id.*). Throughout her analysis, the ALJ pointed out that no physician who had treated Plaintiff had indicated that Plaintiff should restrict her physical activities because of her impairments or the pain they caused her.

In light of the above, the court finds that the ALJ's opinion sufficiently accounted for Plaintiff's own testimony regarding her pain under the standards prescribed by the Eleventh Circuit. Although the ALJ did not cite to specifics when discrediting Plaintiff's testimony in the summary of findings (Tr. 35), her analysis taken as a whole clearly supports her conclusion that Plaintiff's

---

[6] As directed by the Appeals Council in its order of remand from the initial ALJ decision, the ALJ also incorporated Plaintiff's obesity into her findings, providing that:

> [T]he claimant's obesity is fully accommodated by the restriction to the light exertional level and the limitations to occasionally climbing stairs/ramps, balancing, and stooping; restriction from climbing ladders, ropes, or scaffolds, kneeling, crouching, and crawling; as well as from all use of moving dangerous machinery, driving automotive equipment, and unprotected heights. She has neither alleged, nor has any physician opined that her obesity compounds her problems to a greater extent than that set out in the RFC.

(Tr. 35).

[7] The ALJ found it "interesting" that Plaintiff alleged she was disabled since 2006 but described her occupation as that of a "homemaker" when responding to a social history question in 2007 (Tr. 31).

Case No.: 3:13cv525/EMT

statements about pain were not fully credible.[8]  Thus, the court finds no error in the Secretary's credibility determination.

VI.     CONCLUSION

For the foregoing reasons, the Commissioner's decision is supported by substantial evidence and should not be disturbed.  42 U.S.C. § 405(g); Lewis, 125 F. 3d at 1439; Foote, 67 F.3d at 1560. Furthermore, Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making her findings, or that any other ground for reversal exists.

Accordingly, it is **ORDERED**

The decision of the Commissioner is **AFFIRMED**, and this action is **DISMISSED.**  The clerk is directed to close the file.

At Pensacola, Florida this 30th day of January 2015.


/s/ Elizabeth M. Timothy
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**



**NOTICE TO THE PARTIES**

**Any objections to these proposed recommendations must be filed within fourteen (14) days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**

---

[8] The court is mindful that the ALJ did not find Plaintiff's testimony regarding pain wholly non-credible, but only to the extent that testimony indicated she was unable to perform light exertional work.  See Jones v. Bowen, 810 F.2d 1001, 1004 (11th Cir. 1986) (noting and approving similar finding, namely, that the claimant's testimony "was not credible to the extent alleged given the medical evidence in the record," which included "the absence of pain medication, medical treatment for sleepiness, the absence of medical reference to chest pains, and the absence of nitroglycerine for relief of angina prior to [his date last insured].").